Next case is the Secretary of the Army versus DLT Solutions, 2009, 1536, Mr. Solemson. May it please the Court, Your Honors. The ASB erred as a matter of law in holding that the government breached the non-substitution clause at issue in this case, because the ASB effectively read the word replace out of the clause. Instead, the ASBCA found that the Navy breached the non-substitution clause merely by using functionally similar software that the Navy was using before the lease at issue and intended to use even with the lease and continue to use after the termination. Let me just make sure I understand the facts. So there are nine separate pieces of software that the board found below constituted the functionally similar universe that was being used. And the argument is seven of those were already being used by the Navy. Only two of them represented upgrades. Is that correct? That is correct, Your Honor. And what the board also did with respect to the two applications that experienced an upgrade, the board also held that the pre-upgraded version of those two application also constituted a breach and similarly had similar functionality. OK. Well, I guess, so what is it? Suppose that we were to agree with the government on the board having not properly considered the replacement notion in the non-substitution clause. You still have two of nine that are upgraded. We, at a minimum, have to vacate and remand for the board to make a fact finding because we don't have, in this record, the ability to decide as a matter of fact whether those two, the two upgraded, constitute functionally similar software standing on their own. Say the seven were wrongly considered, but we don't have enough information, it seems to me, in this record to be able to make a determination, nor should we in the first instance, about whether those two standing alone might be functionally similar enough. Do you agree that that's what this court would have to do? I think if the court got to that point, then yes. Then the court would have to remand. But I think there are several ways the court could simulate. In other words, you don't think that the upgrades, since they weren't replacing, there wasn't anything replaced. The original software was there, so the upgrades were to what was not replaced. Correct. And that's where I was headed. I said if the court got to Judge Moore's analysis, then yes, it characterized that way, the appropriate recourse is to remand. But I don't think that it needs to get that far because Your view was that there never was a replacement. There was never a replacement because the software at issue that was upgraded, the DC PDS components, were components that were run by the Department of Defense, not the Navy, with whom the lease was signed. And those components were in place from the beginning and on an upgrade schedule that the Navy, who entered the lease contract. Suppose the government had not canceled this thing. Instead of terminating for convenience, it hadn't, it just went ahead. And they had installed this software. Would it have continued to use the old software? Yes, yes. And there is plenty of evidence in the record that that's the case, too. It would have continued. It would have continued to use whatever the DC PDS were the two applications that Judge Moore referred to. And those two applications would have been used even with the DO-29, even with the leased software, even if they hadn't terminated for convenience. And DOD runs that system. And the other services are required to use it for their HR needs. And DOD was going to upgrade it on whatever schedule DOD was on, and it got upgraded. Let me ask you another thing. I take it this language is at least somewhat ambiguous as to what it was intended. And isn't it appropriate in interpreting this language and applying it to look basically to the underlying purpose of this clause? And it seems to me that the purpose of this clause was quite obviously to prevent the government. We're dealing only here with cancellation for the government's convenience. To prevent the government from canceling something for its convenience because it thought it could substitute for the stuff that it was using something else that was almost as good, or maybe even better, or cheaper. I think that's absolutely, we believe that's absolutely correct. That's the basic purpose of it. And I suppose the answer then is that is addressing the situation where what was purchased was used. And the only use that I can see that your opponent says was made of this, they were going to use it to determine whether they would use it. Well, that's correct. And we didn't challenge that conclusion of the board on appeal before this court. But we nevertheless agree with your honor that the correct way to look at this clause is that it penalizes the government for terminating for convenience. For example, instead of using the Oracle software it acquired via this lease at issue, it had gone out and purchased, I don't know, PeopleSoft to replace the Oracle because it decided that there was a better, cheaper solution. But that's not what happened here. What happened here was the government terminated the lease for convenience, returned the delivery order 29 software, and continued right along with the software that it had been using the whole time. As I understand, it terminated because it discovered it couldn't use it. Is that right? That's correct, your honor. It didn't terminate it because it discovered there was something that wouldn't cost much more, but was much better, or anything like that. It just realized when it got the software, it wouldn't do the job. That's correct, your honor. And that the board alluded to below in the course of rejecting the contractor's argument that somehow there was a problem with the termination for convenience. And in fact, the board found below that there were changed circumstances, which included DOD's failure to- This is the first time I've ever seen this clause. Are these clauses fairly common, or are they unusual? They're not included in the regulations, are they? No, your honor. And I believe there's a few other related cases that are percolating around the court at the moment, or around the board. But as in this case, for example, the clause was inserted at the behest of a financing company, which wanted to make sure that it had a certain stream of income, independent of whether the government decided to terminate for convenience. And so it was put in at the financing company's behest. And it's why we argue in our- It's so unusual in that it only prohibits the government from doing it for one year following the termination of the contract. That's correct, your honor. It's not a general prohibition for five years, or anything like that. And it's obviously designed to discourage the government from doing this. From finding a competitor, for example, and replacing the solution acquired from the contractor with a different solution. Well, why isn't the DC PDS upgraded software that gave the web-based interactive initiative that process, why isn't all of that considered a substitute for the software that they were selling you? Because that seemed to me to be one of the most critically sought features by the Navy. I mean, I'm not trying to make fact findings here, just based on the record that was provided. It seemed like the critical aspect of what was missing in the software package as it existed was the web-based interactivity. And the new upgrade that was provided to the Navy by DoD suddenly gave that. That's exactly what they would have gotten in the software they had purchased. In fact, your honor, the board found in several places that the functionality that the Navy hoped to acquire via the DO-29 software was not achieved based on the termination. That they don't have that capability merely because those two elements were upgraded. And what the record reflects and the board's findings reflect is that the DO-29 software was supposed to become integrated by linking itself to the 26 previously used applications that the Navy continues to use, one of which is DCPDS. So what happened was all of the DO-29 software was supposed to talk to the previously used applications, including DCPDS, in whatever format it was used. But she nonetheless held them to be functionally similar. Which, I'm sorry, your honor? But she nonetheless held them to be functionally similar, as a matter of fact. So you're saying that Navy never got the functionality they would have gotten from the software that they decided to ultimately not purchase, the software that was the subject of the termination for convenience. Yet she nonetheless went on to hold that the body of software that they were using that was provided to them by DCPDS was, in fact, functionally similar. So I'm finding it a little difficult to make your argument to me that right now your argument seems to be a factual one, which is the Navy never got the functionality it was seeking in the new software. But in fact, she held there was functionally similar. Well, I think the answer is, your honor, the board also held that the seven other applications were also functionally similar. So the question is not so much whether they're functionally similar, because the other seven applications, if I understood you correctly earlier, our clients agree with us that the seven applications that are precisely the same and not upgraded don't violate the clause. I was sort of asking you if I agreed with you. If, OK. So the test isn't simply whether the application is functionally similar. It's whether it constitutes a replacement with a new piece of software. And our contention. How could the upgrade be a new piece of software? It's an upgrade. I mean, when I buy Word 7.0 or 8.0 or 9.0, that upgrade, granted some of the basic Word program I used to use has not changed, it's a replacement software. But there's no finding here at all that the upgrade gave any increased functionality over the board. That was where I was at the beginning, which is why I asked you whether I needed to vacate and remand for that particular. That's exactly the fact I seem to be missing. You would say that an upgrade of Word is quite different from a switch to Word Perfect. That's correct. That's correct. And more so because in this case, the lease itself defines the word government in the clause as being Navy OCHR, the Navy Office of Human Resources. But in this case, DCPDS is undisputedly run by the Department of Defense. They control the updates. And in fact, it's on an update schedule with the ultimate seller of the software, Oracle. So the contractor in this case is a middleman, if you will, between Oracle and the government. And Oracle has another contract, I believe, with a middleman with the government for DCPDS. And because, I mean, it's a little ironic, because Oracle upgraded on an automatic schedule the DCPDS modules run by DoD, the Navy is then found to have somehow substituted the very elements of software that they're required to use by DoD policy. Even though, again, to get back to the way Judge Friedman framed it, what the Navy did not do here was go out and obtain a competitor of Oracle and get a better deal and then replace it in. After the government canceled for its convenience, as I understand, they continue to use the old software, but it was upgraded, some of it at least? Out of the 26 elements of software, one or two, depending on what part of the board's decision one looks at, one or two elements were upgraded. But those two elements were part of a system called DCPDS. And that's what- Basically, you're saying they continue to use the old system. That's correct, Your Honor. You're well into your rebuttal. Would you wish to save it? Yes, Your Honor, we'll reserve the balance for rebuttal. Thank you. Is it Mr. Eisenberg or Eisenberg? Eisenberg, Your Honor. Eisenberg. May it please the court, my name is David Eisenberg. And I represent the respondent on this appeal. The position of the respondent here that the sole issue before the court is what the word replace means. And the guidance to the court is from the findings of the court below, which are undisputed. The court below found that one alternative was replaced with another. The testimony below is that the government had a choice when they went down the road of acquiring this software, of using the as-is solution, which was DCPDS, or acquiring this solution, Delivery Order 29, and implementing that solution. But don't we have to interpret replace in deciding if that's what it means in the application of this provision, in light of the overall purpose of this clause? And is that a question of law or fact? We can't just look at it and say, you couldn't decide the meaning of replace in this clause just by reading the dictionary, could you? I think you have to evaluate it in the context of the facts of this case, and the facts that were developed during the evidence in this case. But more than the fact of this case, don't you have to look to see, what is the purpose of this clause? This is not a typical clause that one finds in the average government contract. So it's in there for some to deal with a particular problem. Well, in fact, Your Honor, there is evidence of the purpose of this clause. The interesting thing is that the evidence of the purpose of this clause comes from the testimony of Mary Beth Corrente, which is attached to the appendix here. Mary Beth Corrente worked for the finance company. She testified that in order to finance one of these transactions, because the finance company is paying the manufacturer, paying the contractor, they look for this particular clause. And they focus, when they do their due diligence call on the software, they focus on the functionality of the software. And they ask particular questions as to the reasons why all the payments under the lease may not be made. And in this particular case, the answer from the government was the only reason would be if they didn't have the money. Mr. Eisenberg, is the determination of the meaning of the word replace a question of law, or are we dealing with a fact question? Whether what was done was replaced. I believe it's an issue of law based on the facts and the findings of the court below. And I will make another comment about the purpose of the clause, since Your Honor raised that. The government tries in its brief to add all these arguments and evidence that was not evidence below. First of all, I don't think that the evidence of intent should come in, but to the extent it does, the evidence is from Mary Beth Guarenti. There's no evidence that any intent of this clause required the purchase of a new product. There's no evidence that it required a purchase of a product. There's no evidence that it required substantiality. And there's no evidence that you couldn't go back to an alternative previously rejected. And a simple hypothetical, I think, would answer a number of these questions. If the government had product A during year one, and during year two, they went out and acquired product B, which the parties would stipulate as functionally similar, because the board below found functional similarity, and they acquired it under a lease that had this non-substitution clause, and then in year three, just terminated for convenience and went back to product A, that would violate the simple language of this clause, that you can't replace it with something functionally similar. Clearly, they would be replacing product B with product A. And in that hypothetical, that's no different than the facts and the findings that we have in this particular case. What do you say to your opponent's contention that this product was never used, what they were purchasing was never used? First of all, I think that use is irrelevant. Because as I said, the clause says they can't replace it with something functionally similar. Second, the court below, it's unchallenged by the government on appeal, that the finding of the court below that they did use the product. So we do have use of the product. They used it for its intended purpose? They didn't use it for its intended purpose. But the finding of the court below is that they used it. They used it? They put it into their computers? No. No. But the board below, Judge James, found that they did use it. That finding is uncontested. That's a finding. Well, you say for its intended purpose. I don't understand how it could be for its intended purpose if it was never operated in software. Well, what's interesting about that, Your Honor, is that your focus is on the fully integrated product. This delivery order was simply to deliver the software to the government. As the board below found, it was a separate step of integrating and implementing this software. If the court were to find that that did not violate just the delivery and the focus on the delivery order itself and what was provided, if that doesn't constitute a breach, then the government could acquire the software and simply decide that it doesn't want to implement it and then not pay for it. And given the circumstances, How could it do that? Because under your hypothetical, it never used it. It was obligated to pay for it. Correct. But under your hypothetical, Your Honor, they would never use the software because they didn't go through the second step of implementing it, which the board didn't use it, but they'd have to pay for it. They couldn't just say, we're not using it, therefore, we're not going to pay for it. I guess I'm not understanding because your first question, I thought, was the government never actually used this software. They can't use this software unless they're going to spend another $10 million to go through the integration. That's the reason why they didn't use it. But as I understood, the argument is that before this clause can become effective, the product, the government has to have at least started using the product for the purpose for which it was acquired. And here I gather that they never even opened this software. In other words, if it's not used, it could not have been replaced. Well, except, Your Honor, that the only way they can use it is if they're going to enter into a separate delivery order and spend another $7 to $10 million. That was a finding of the board below that that was the cost. That may be a reason why the government canceled it. But I don't understand your argument. I mean, you may argue, a legitimate argument, that under this provision, the government doesn't have to have started using it. It could replace your argument. I take it as the government replaced it by continuing to use the old software. They replaced it because their option at the initial stage was whether to go forward with what they had or acquire this software to use in conjunction with what they had. And they went back to what they originally started with, which was just using DC PDS. And under that circumstance, they replaced the option of using this software with DC PDS with just using DC PDS. So that's the replacement argument, even though they never actually used it. They had the option to use it. They acquired it to use it. Then they reversed. They changed their mind. And the purpose of this clause in the testimony and the evidence before the board below was that the intent of this clause is to prevent the government from changing its mind, that the reason, and particularly given where the finance company is already paying the manufacturer and the contractor, the risk to the finance company is only one of non-payment. It's not a risk that the government won't use it. The government's established that it was essential. The government doesn't deny that it was essential. The government doesn't deny that the functionality of the software was essential. That's not the reason that they terminated the contract for convenience. It wasn't that the product and the functionality weren't essential. It was that they couldn't use it, that they were already receiving it from DC PDS, the functionality that they needed. The government shouldn't be in a position of acquiring software under these circumstances and then changing its mind and terminating. That's why this clause is there. This was the bargain for a clause that the government executed a contract. And the government should be held to the bargain that they made. In terms of the arguments of the government that it's an unnaturally broad reading or it severely impacts their mission or their ability to terminate the contract, none of those has merit because the government still gets the functionality that they wanted. They're still getting human resources software functionality that they wanted. So they're accomplishing their mission and they can still terminate contracts, but their decision when they entered into this contract was if they terminated it, they're going to have to pay for it. You got paid better than a million dollars in the settlement of your termination clause, didn't you? We did. But the contract is more than that. They acquired this software and they violated the non-substitution clause. And therefore, the government breached the contract and the contractor is entitled to damages for that breach of contract. And the typical contract damages would be your expectation damages. And in this particular case, if there is substitution and if there is a violation of replacing it with functionally similar software, then the contractor should receive payment for that. Anything further, Mr. Eisenberg? No, Your Honor. Thank you. Mr. Solomson has a little rebuttal time. I think Mr. Eisenberg set up the question well. And indeed, it's found at page 16 of DLT's briefs, where DLT says that the question is whether you could have a replacement where OCHR continued to use nine HR applications that were functionally similar to the functions of the delivery order 29 software. So he frames it exactly right. The question is, if you have A and you acquire B to use with A and you go back to just using A alone, have you replaced B? Except the board said that it was used for analyzing and evaluating whether it could install it and implement it. Correct. Here, we did not even use B. That is true. But I'm saying, even given the fact that we have not challenged it on appeal, and even assuming we go with the board's, the court were to go with the board's finding that we used it. But even if that were the case, the question is still, could anyone reasonably read the word replace to be use A plus B together? The contractor knows that's what we intend to do. And Mr. Eisenberg just conceded that's what we intended to do. All the parties knew that's what we intended to do with DO 29. So if we use A, the Navy intends to use A plus B, and then goes back to using just A, can we say that A replaced B? And your argument extends. I take it that continuing to use does not replace it. Correct. And your argument extends to upgrades. Correct. Correct, particularly those, in this case, that are made by Oracle itself, particularly those that are not made by DoD. Let me make the facts really simple. Suppose you're using a program that does not allow you to interact with the web right now. And you buy from them or from anyone software that will upgrade your current system to allow you to have web interaction. That's the only thing this new software is going to do. It's going to give you web interactivity. Now, instead, your previous software provider comes along with its own upgrade that does exactly that, and you now terminate the contract for the web upgrade with the independent third party. If there is a non-substitution clause like this, and if those were the facts, wouldn't that constitute a replacement? I mean, it seems to me I don't think you can lump in the upgrade in the same way as the things you previously possessed, as an under your logic. In the hypothetical that Your Honor presented, if it were an upgrade to all 26 applications that yielded the same functionality in total that DO-29. Just say one. There's just one thing. The new software is giving you one function, one function only. It's allowing you to interact with the web, period. There is an upgrade package from your previous provider that suddenly magically does exactly that. You say, I don't need this new stuff anymore. And so you terminate for convenience. At that point, have you substituted? We do not believe that one upgrade of one piece of functionality out of 26 software. No, I'm saying there's only one. There's only one. Only one software. Only one. The only one thing that you contracted for with. There's just one. All you want to do is web interact. You contracted for someone to come in and give you software that would make your system interact with the web. That's the only thing they were ever going to provide for you. And instead, lo and behold, your previous software provider does it and offers it to you as an upgrade. You therefore terminate for convenience the contract. Doesn't that constitute a substitution under those circumstances? Under those circumstances, I would agree that with just looking at a one to one comparison, then yes, that would be a replacement. But that's far from this case. The fact is that the board found that we have not had that functionality. And in fact, the board found that while the upgrade changed its functionality, it did not find the extent of the change or how it was improved or why we're getting the total amount of functionality or even part of the functionality from the delivery order 29 software. Thank you, Mr. Solemson. Take the case under advisement.